**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEANNETTE GUIRAUD,** | **Civil Action No. _____** |
| **PLAINTIFF,** | |
| **v.** | |
| **ESA MANAGEMENT, LLC,** | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | |

## COMPLAINT AND JURY DEMAND

Plaintiff Jeannette Guiraud, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages, and other relief on behalf of Plaintiff Jeannette Guiraud (hereinafter "Ms. Guiraud" or "Plaintiff"), a former employee of ESA Management, LLC (hereinafter, "ESA" or the "Company"). Ms. Guiraud has been harmed by ESA's harassment and discrimination on the basis of her race and national origin, and by ESA's unlawful retaliation for Ms. Guiraud's complaints of discrimination and harassment, culminating in her wrongful termination on October 14, 2019.

2.      This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTIONAL STATEMENT

3.      This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.      This Court has supplemental jurisdiction over Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6.      All conditions precedent to the institution of this suit have been fulfilled. On April 7, 2020, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On July 28, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

**VENUE**

7.      This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.      This action properly lies in the Eastern District of Pennsylvania because Plaintiff was employed by Defendant in this district and the claims and significant activities associated with the claims took place in this judicial district.

---

[1] It has been less than one year since Ms. Guiraud dual-filed her Charge of Discrimination as a Complaint with the Pennsylvania Human Relations Commission ("PHRC") for Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Guiraud will seek to amend her Complaint in this matter to add her PHRA claims once she has exhausted her administrative remedy with respect to those claims.

## PARTIES

9.      Plaintiff Jeannette Guiraud is an adult African female from the Ivory Coast, who currently resides in Philadelphia, Pennsylvania and the United States of America.

10.     Defendant ESA Management, LLC is a Delaware limited liability company with its principal office located at 11525 N Community House Road Charlotte, North Carolina 28277-3609.

11.     Defendant ESA has a location at 114 Welsh Road, Horsham, Pennsylvania  19044, where Plaintiff was employed.

12.     At all relevant times, Defendant is and has been an employer employing more than 500 employees.

13.     Defendant does significant business within the Commonwealth of Pennsylvania.

14.     At all relevant times, employees of ESA acted as agents and servants for ESA.

15.     At all relevant times, employees of ESA were acting within the scope of their authority and in the course of employment under the direct control of ESA.

16.     At all times material hereto, ESA acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with ESA and in furtherance of ESA's business.

17.     At all times relevant hereto, Defendant is and has been an "employer" and/or "person" within the meaning of the laws at issue in this matter, and is accordingly subject to the provisions of said laws.

18.     At all relevant times hereto, Plaintiff Jeannette Guiraud was an "employee" of Defendant ESA within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

19.     This Honorable Court has jurisdiction over Defendant.

## FACTS

20.     ESA Management, LLC owns and/or operates several hotels under the business name "Extended Stay America" or "Extended Stay Hotels.".

21.     Beginning in April 2006, Ms. Guiraud was employed as a Night Attendant for ESA at ESA's "Extended Stay" hotel located in Horsham, Pennsylvania.

22.     During her lengthy employment of over thirteen (13) years with ESA, Ms. Guiraud excelled in her position and performed her duties in an excellent and professional manner.

23.     Despite her loyalty and consistent performance, upon the hire of a new manager as Ms. Guiraud's supervisor, Ms. Guiraud was subjected to harassment and discrimination on the basis of her race and national origin, and retaliation for her complaints about harassment and discrimination.

24.     Ms. Guiraud worked the night shift, from 11 p.m. to 7 a.m., performing such tasks as housekeeping, laundry, and dishes, among other things.

25.     Notably, for several years during her employment, Ms. Guiraud worked for numerous managers with whom she had an excellent professional relationship and who praised her for her exemplary work.

26.     Upon being hired in 2006, Ms. Guiraud was instructed to perform various housekeeping and cleaning tasks.

27.     Although Ms. Guiraud did not know how to use a computer, she was told that it would not be an issue and that she did not need to use the computer since her job description did not include checking in guests.

28.     For the first nearly ten years of her employment at ESA, Ms. Guiraud was frequently commended for her work.

29.     In or about 2015, however, after ESA hired Arisa Humphrey as Ms. Guiraud's new supervisor, Ms. Guiraud began to experience harassment and discrimination on the basis of her race and national origin.

30.     Ms. Humphrey consistently treated the non-African individuals more favorably than she treated Ms. Guiraud.

31.     When Ms. Humphrey began at ESA, she insisted that Ms. Guiraud and the other nighttime employees learn how to use the computer and check in guests.

32.     Despite Ms. Guiraud's several requests for someone to train her on how to use the computer, for which she offered to stay late or come in early to receive such training, Ms. Humphrey failed to properly train or ensure that someone would train Ms. Guiraud.

33.     Notably, Ms. Humphrey trained or had others train other nighttime personnel, but Ms. Guiraud was never given any training, and was instead told to "learn it."

34.     Thereafter, Ms. Humphrey yelled at Ms. Guiraud on several occasions, claiming that she was not checking in people properly or quickly enough.

35.     In addition for her inappropriate outbursts at Ms. Guiraud for her attempts to use the computer despite refusing to train her or allow others to train her, Ms. Humphrey engaged in several other acts of discrimination and harassment against Ms. Guiraud on the basis of her race and national origin.

36.     Notably, Ms. Humphrey completed performance reviews and evaluations for all non-African employees, but did not complete a performance review for Ms. Guiraud or for another employee who, like Ms. Guiraud, was from Africa.

37.     Ms. Humphrey also frequently yelled and cursed at Ms. Guiraud, despite Ms. Guiraud's requests that she not yell or curse at her.  Ms. Humphrey did not treat the non-African employees in this manner.

38.     Moreover, Ms. Humphrey allowed other non-African employees to come in late, thus forcing Ms. Guiraud to stay later than her shift, and refused to assist Ms. Guiraud with any work issues or questions she had during her shift.

39.     As Ms. Guiraud worked the night shift, her shift ended at 7 a.m.

40.     Because other employees were so frequently late, Ms. Guiraud was often compelled to stay later than her shift, until 8:45 or 9:00 a.m., even though her shift ended at 7 a.m.

41.     Additionally, whenever Ms. Guiraud would attempt to contact Ms. Humphrey to discuss a work issue or report a problem, Ms. Humphrey would become angry and yell at Ms. Guiraud, or simply ignore her calls.

42.     Tellingly, although she was her direct supervisor and the exact individual whom Ms. Guiraud should be able to seek assistance and ask questions, Ms. Humphrey repeatedly told Ms. Guiraud not to bother her and not to call her.

43.     In one example, at 11:30 p.m. one night, a guest approached Ms. Guiraud and told her that he was supposed to pick up his luggage. No one had informed Ms. Guiraud about the guest or his luggage. Ms. Guiraud attempted to call her co-worker who had been on duty at the time, but she did not pick up. Ms. Guiraud then called Ms. Humphrey, who complained that Ms. Guiraud was "bothering her at night."

44.     Frustrated by these several instances of clear harassment and discrimination, Ms. Guiraud complained of the discriminatory and harassing treatment directly to Ms. Humphrey.

45.     Ms. Guiraud informed Ms. Humphrey that Ms. Humphrey was treating her differently because Ms. Guiraud was African.

46.     Ms. Humphrey did not deny the statement, but simply responded, "Don't say that."

47.     Ms. Guiraud also complained to Ms. Humphrey that she treated her like a slave and treated her badly, as she was not paid to come in early or work late, but was consistently forced to do so.

48.     Ms. Guiraud also contacted the District Manager to report Ms. Humphrey's wrongful behavior, but ESA failed and/or refused to meaningfully address Ms. Guiraud's complaints.

49.     On October 12, 2019, Ms. Guiraud had been working her usual shift, which ended at 7 a.m.

50.     Ms. Guiraud was anxious to leave as soon as her shift ended that day because she had an appointment that morning.

51.     Ms. Guiraud had specifically notified ESA in advance that she had an appointment that morning after her shift ended and thus, someone had to arrive on time at 7 a.m. because she could not stay late.

52.     However, as typically happened and which was accepted by Ms. Humphrey without issue, and despite her previous notification to ESA that she had to leave at 7 a.m., no one reported to work at 7 a.m. to relieve Ms. Guiraud and no one called her to indicate that they would be coming into work late.

53.     Because she had an appointment and could not stay an extended period of time to wait for another employee, Ms. Guiraud was compelled to contact Ms. Humphrey to inquire as to whom was scheduled for the 7 a.m. shift.

54.     Ms. Humphrey responded that it was Nisreen [LNU], and asked if she was there yet.

7

55.     Ms. Guiraud informed Ms. Humphrey that Nisreen was not there as she was supposed to be, and reminded Ms. Humphrey that she had to leave because her shift was over and she had an appointment that morning.

56.     In response, Ms. Humphrey complained that Ms. Guiraud had woken her up, that she was tired and had to sleep, and hung up the phone.

57.     After this discriminatory, harassing and inappropriate exchange, in which Ms. Guiraud was again treated differently than her non-African co-workers and her legitimate concerns were again dismissed, Ms. Guiraud called the District Manager to report the situation and the discriminatory and disparate treatment.

58.     Finally, at 7:45 a.m., Nisreen arrived at work for her 7:00 a.m. shift.

59.     Upon Nisreen's arrival, Ms. Guiraud asked her why she had not called her to let her know that she was running late.

60.     In response, Nisreen said that her phone had died.

61.     Notwithstanding her alleged "dead phone," Nisreen stated that she had received, and taken, a call from Ms. Humphrey in which she learned that Ms. Guiraud had called the District Manager.

62.     Nisreen became volatile and angry towards Ms. Guiraud, cursing at Ms. Guiraud that she was a nursing mother that had to take care of her child.

63.     Only two days later, on October 14, 2019, Ms. Guiraud was terminated.

64.     Specifically, on that day, as Ms. Guiraud was preparing a room, Ms. Humphrey told Ms. Guiraud to leave everything and follow her. Once Ms. Guiraud did so, Ms. Humphrey handed her three documents.

65.     The first document was a suspension letter, claiming that Ms. Guiraud had given a key to a guest that had not been registered in the computer system. The man had been part of a business group at the hotel, and Ms. Guiraud was unsure what to do at the time, as Ms. Humphrey had so frequently told her not to bother her.

66.     The second document was a written letter from Ms. Humphrey, claiming that, on another date, Ms. Guiraud failed to scan the ID for a guest upon checkout. The reference to this incident was extremely surprising to Ms. Guiraud, as the incident had occurred many weeks prior, she had apologized, and there was no write up or disciplinary action given at the time of the incident or thereafter, until now.

67.     The third document was a final letter from the District Manager, stating that Ms. Guiraud had insulted Nisreen and that Ms. Guiraud was being terminated, effective immediately.

68.     Ms. Humphrey then sent Ms. Guiraud home and reported that the District Manager stated that she should not return to work anymore.

69.     On November 5, 2019, Ms. Guiraud wrote to Jerry Burns at the corporate office to detail the incident and the discriminatory, harassing, retaliatory and disparate treatment she had endured.

70.     Ms. Guiraud received no response regarding her complaint.

71.     The circumstances surrounding Ms. Guiraud's termination are highly suspicious and indicate that ESA's real reason for terminating Ms. Guiraud was discrimination and retaliation against Ms. Guiraud for her complaints of discrimination and harassment.

72.     The reasons given for Ms. Guiraud's termination are suspect, as Ms. Guiraud had been an excellent and dedicated employee throughout her employment with ESA and had not been

written up or received any disciplinary action for the alleged "incidents" that were said to be grounds for her termination.

73.     Moreover, other non-African employees who were similarly situated to Ms. Guiraud made mistakes that were regularly overlooked by Ms. Humphrey and ESA and they were not terminated for such mistakes.

74.     The reasons given for Ms. Guiraud's termination are pretext for discrimination and retaliation.

75.     Most tellingly, Ms. Guiraud's termination occurred only two days after her most recent call to the District Manager to complain about discrimination and harassment by Ms. Humphrey and ESA.

76.     Given her treatment during her several years of excellent employment with ESA, the baseless grounds for her termination, and the proximity in time between her most recent complaints about discrimination and harassment and her termination, Ms. Guiraud maintains that ESA's proffered reason for termination is mere pretext for discrimination on the basis of her race and national origin, and retaliation for her complaints about discrimination and harassment.

77.     Ms. Guiraud was discriminated against and harassed on the basis of her race and national origin, and retaliated against because of her reports of harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

78.     Ms. Guiraud has suffered, and continues to suffer, mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendant.

79.     Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Guiraud severe emotional distress.

80.     Ms. Guiraud has suffered financial losses including, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit as a proximate result of the actions and inactions of Defendant.

## COUNT I
## Title VII of 1964, 42 U.S.C. § 2000(e), et seq.

81.     Plaintiff Jeannette Guiraud repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

82.     Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

83.     In discriminating against and harassing Ms. Guiraud because of her race and national origin, and in retaliating against Ms. Guiraud for her complaints about harassment and discrimination, Defendant violated Title VII.

84.     Defendant's violations were intentional and willful.

85.     Defendant's violations warrant the imposition of punitive damages.

86.     As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Jeannette Guiraud has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### The Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq.

87.     Plaintiff Jeannette Guiraud repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

88.     Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

89.     In discriminating against and harassing Ms. Guiraud on the basis of her race, and in retaliating against her for her complaints about discrimination and harassment, Defendant violated the Section 1981.

90.     Said violations were intentional and willful.

91.     Said violations warrant the imposition of punitive damages.

92.     As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Jeannette Guiraud has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

### PRAYER FOR RELIEF

93.     Plaintiff Jeannette Guiraud repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

        **WHEREFORE**, Plaintiff Jeannette Guiraud respectfully requests that this Court enter judgment in her favor and against Defendant, and Order:

        a.   Appropriate equitable relief;

        b.   Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c.   Defendant to pay Plaintiff punitive damages;

d.   Defendant to pay Plaintiff compensatory damages for future pecuniary losses,

     pain and suffering, inconvenience, mental anguish, loss of employment and other

     nonpecuniary losses as allowable;

e.   Defendant to pay Plaintiff's costs of bringing this action, including, but not

     limited to, Plaintiff's attorneys' fees;

f.   Plaintiff be granted any and all other remedies available pursuant to Title VII and

     Section 1981; and

g.   Such other and further relief as is deemed just and proper.

## **JURY DEMAND**

Plaintiff Jeannette Guiraud hereby demands trial by jury as to all issues so triable.


By:   */s/ Christopher A. Macey, Jr.*
      Christopher A. Macey, Jr., Esquire
      Bell & Bell LLP
      1617 John F. Kennedy Boulevard
      Suite 1254
      Philadelphia, PA 19103
      (215) 569-2500


      *Attorneys for Plaintiff Jeannette Guiraud*

Dated: October 23, 2020